IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

FILED at 2:25 p.m.
June 11, 20 10
Courtroom Deputy/Scheduling Clerk
U.S. District Court
Middle District of Georgia

UNITED STATES OF AMERICA :
:
VS. : CRIMINAL NO. 7:10-CR-13(WLS)
:
KEVIN CROW :

# PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and KEVIN CROW, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant understands that defendant would be entitled to confront and to cross-examine the

government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A) The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges defendant with Theft of Trade Secrets, in violation of Title 18, United States Code, Section 1832.

2

(B)     That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a maximum sentence of ten (10) years imprisonment, a maximum fine of two hundred and fifty thousand dollars ($250,000.00), or both, and a term of supervised release of three (3) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00.

(C)     The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office. The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D)     The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on

that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G) Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H) The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the defendant's waiver includes any collateral attack on the District Court's sentence. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of the defendant's sentence, then the defendant shall have the right to cross-appeal from the sentence.

(I) The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(J) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present information as well as any and all criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.

The United States of America and defendant, KEVIN CROW hereby agree that any breach of this agreement by the defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any

judicial proceeding in connection with the individuals, matters, and transactions referred to in the indictment, would: (a) not relieve the defendant of defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the defendant in any subsequent judicial proceeding any and all statements made by the defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant.

(B) That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful

testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court. If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the defendant fail to cooperate truthfully and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(C) Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously

unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(I), based on any information provided by the defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(D)    If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

The defendant was an engineer employed by Turbine Engines Components Technologies (TECT) Corporation in Thomasville located in the Middle District of Georgia from approximately August 1979 until June of 2007 when the defendant was laid off. TECT manufactures a diverse range of products wherein a trade secret is related to or is included in a product. These products range from premium forged hand

9

tools and medical instruments to aircraft hardware and turbine engine components all of which are in interstate and or foreign commerce. Because of the trade secrets and sensitivity of the nature of the TECT business, the defendant as an employee and engineer working directly with and on the trade secrets, signed confidentiality agreements, as well as signing personal commitment /acknowledgment agreements to follow TECT business Conduct Guidelines. As an employee of TECT the defendant was continually provided policy statements with explicit direction on identifying trade secrets within the company and how to protect those trade secrets. Furthermore, during his exit interview the defendant signed a document stating that he had returned all documents containing any trade secret information to TECT. In fact, the Defendant had taken approximately 100 computer discs (CD) containing multiple pieces of information considered trade secrets from TECT.

When the defendant was laid off he went to work for Precision Components International (PCI) a competitor of TECT in Columbus, Georgia in the fall of 2007. Both companies are in the business of manufacturing and selling engine blades for military aircraft engines.

In early 2008 the defendant made contact with an employee of TECT requesting forging price sheets which the employee maintained on a daily basis which contained the following information: (1) Name of vendor providing raw materials; (2) Name of customers doing business with TECT; (3) Program - type of engine the part is being made for; 4) Vendor's part number; (5) Customer's part number; and (6) Part related to the raw material per unit. As this information is proprietary and cannot be released without prior approval, the employee reported the request to his superiors. If a

competitive business were to obtain the information and used, it will cause the competitor financial ruin. When the defendant called a second time asking for the information, the TECT employee told the defendant the information could not be released and that the defendant would have to contact TECT management for approval.

Later, in March and April of 2008 the defendant contacted a former co-worker, John Goodwin (GOODWIN) who was still employed by TECT. In a recorded telephone conversation, the defendant requested Goodwin obtain and send to the defendant copies of TECT'S 2007 and 2008 contract reviews that contained trade secret information. The defendant also admitted in the conversation that when he left TECT he took with him approximately 100 CD's containing confidential information including blueprints, cost and pricing information belonging to TECT. The defendant further went on to admit that providing the information could be considered industrial espionage. Further he promised GOODWIN that he, GOODWIN, would get a job with PCI if he lost his job for providing the information. The defendant said : "....I'd like to see that company [TECT] go, but that fuckin' mis-management they have right now and the piss poor ownership, it's gotta go. You know. And if I can help aid some of that takeover by the information that I can get to them [PCI], you know, is it considered industrial espionage? Ah, can you even loose your job over it, yea probably, ah but, one thing the Israelis did the last time I did it, ah, they said here, we're going to promise you a job. So no matter what happened to TECT, stick it out, get a package, and then we will give you a job."

11

As a result of defendant's actions TECT reported the theft of the trade secrets to the Georgia Bureau of Investigation (GBI). A knock and talk at the home of the defendant led GBI to recovering over 90 CD's from the defendant containing trade secret information of which he had referred to in his conversation with GOODWIN. The defendant admitted to taking the information and knew the information was to have been turned back over to TECT upon his severance. The defendant knew there were multiple trades secrets on the CD's. An independent expert on trade secrets, BEC Consulting, reviewed the information on the CD's obtained from the defendant. The expert found that there were multiple pieces of information on the CD's that met the definition of trades secrets pursuant to the Economic Espionage Act of 1996 (EEA). Pursuant to the EEA the definition of a trade secret is broad. The definition includes both tangible and intangible property. The definition will protect all types of information if the owner of the information has taken reasonable care to keep such information secret and if the information derives independent economic value, actual or potential, from not being generally known to, or not being readily ascertainable through proper means by, the public. The expert found the following to be trade secrets found on the CD's taken by the defendant, including but not limited to: tool drawings, drawings, process books; specific directories and drawings for specific clients; PWC guages containing processes and tooling developed by TECT for a unique hollow product; processing parameters for key parts which TECT produces; forging drawings for various components for TECT machines; forge drawings, process sheet and process drawings for the T-56 turbine blades; photos of the OGV process and tooling; and pricing and marketing information only available through TECT.

The defendant knew that the theft of TECT trade secrets would and did injure TECT.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 11th day of June, 2010.

G. F. PETERMAN, III
ACTING UNITED STATES ATTORNEY

BY: _____
JENNIFER KOLMAN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 427930

All parties agree that for purposes of sentencing when determining loss amount said amount shall not exceed 14 million - but may also be negotiated downward. CP 3/10/08

13

I, KEVIN CROW, have read this agreement and had this agreement read to me by my attorney, CHRISTOPHER RODD. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
KEVIN CROW
DEFENDANT

I, CHRISTOPHER RODD, attorney for defendant KEVIN CROW, have explained the information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

_____
CHRISTOPHER RODD
ATTORNEY FOR DEFENDANT